## Prouty *v.* Prouty. & Barr Boot & Shoe Co.    Kimball's Appeal.

*Auditor's finding of facts.*

An auditor's finding of facts confirmed by the court below will not be reversed by the Supreme Court except in a case of clear error.

*Corporation—Confession of judgment.*

An insolvent corporation may prefer a creditor by confessing judgment to him, where there is no fraud in the contracting of the debt or the confession of the judgment.

*Corporation—Violation of charter—Partnership.*

Query whether the fact that a corporation, chartered for the purpose of manufacturing boots and shoes, engaged only in the business of buying boots and shoes, will render the officers and stockholders partners.

Argued Jan. 18, 1893.    Appeal, No. 181, July T., 1892, by Alfred Kimball et al., from order of C. P. No. 2, Phila. Co., Sept. T., 1890, No. 266, distributing fund raised by sheriff's sale of personal property.    Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Exceptions to report of auditor distributing fund raised by sheriff's sale.    The case was referred to Edward W. Magill, Esq., as auditor, who reported in part as follows :  " On June 4, 1888, the firm of Austin Fields & Co., then engaged in the shoe-jobbing business in Philadelphia, failed.    James A. Fields, a member of the firm, made a proposition to the creditors to pay fifty per cent of their claims in settlement, which proposi-

tion was accepted.  James A. Fields then purchased from the assignee of Austin Fields & Co., under a decree of court, the assets of his late firm, and, in order to fulfil his agreement with the creditors for the payment of the fifty per cent, entered into an agreement under date of August 3, 1888, with Charles N. Prouty of Spencer, Mass., a member of the firm of Isaac Prouty & Co., by the terms of which Charles N. Prouty agreed to indorse the composition notes given by James A. Fields in liquidation of the debts of Austin Fields & Co., and in consideration of the liability thereby assumed was to receive of James A. Fields his note for $14,000, and was also to receive, as collateral security for said note and against liability by reason of his indorsement of the composition notes, an assignment of the assets purchased by Fields from the assignee of his late firm, and said assets to be left in the hands of Fields as agent for Charles N. Prouty to conduct the boot and shoe business, dispose of the stock, collect the assets of the old firm, pay the indebtedness as it accrued, and pay the composition notes as they fell due.

" After the payment of the said notes Prouty was to receive, from the stock, cash, or assets of the business, the sum of $14,000, and upon receipt of that sum the business and whatever might remain of the assets was to vest in and become the property of Fields, who should become the sole and individual owner thereof.

" In pursuance of this agreement Charles N. Prouty (whose firm was a creditor of Austin Fields & Co.) indorsed the composition notes, received James A. Fields's note for $14,000 in payment of the bonus agreed upon, and the title to the assets of the late firm of Austin Fields & Co. was assigned and transferred to Charles N. Prouty, but the assets themselves remained in the hands of James A. Fields, who acted as agent for Charles N. Prouty in pursuance of their agreement.

" On Dec. 1, 1888, James A. Fields, Everett V. Prouty, and Edward L. Barr agreed to form a corporation under the name of James A. Fields Shoe Co. for the purpose of ' manufacturing and selling boots and shoes and foot-wear.' [It was agreed that James A. Fields should furnish the stock of boots and shoes which he then had on hand, being part of the assets of Austin Fields & Co., at a valuation of $40,000.] [4] for which

he should receive stock of the corporation, and that he should also contribute the good will of his business at a valuation of $10,000, for which amount he was also to receive stock of the corporation. Edward L. Barr and Everett V. Prouty each agreed to furnish $10,000 in cash. The title to the boots and shoes then in possession of James A. Fields being in Charles N. Prouty it was agreed that Prouty should release his claim upon the same and accept as collateral security for the debt thereby secured $40,000 worth of the stock of the corporation then about to be formed, and for the purpose of carrying out this arrangement Charles N. Prouty executed a power of attorney dated Nov. 22, 1888, by which James A. Fields was authorized to sell, transfer, and assign to the said James A. Fields Shoe Co., the corporation then about to be formed, all the boots, shoes, stock and fixtures then upon the premises 837 Market street, being the same which had formerly constituted part of the assets of Austin Fields & Co.

" On Jan. 1, 1889, a charter was issued by the state of Pennsylvania incorporating the James A. Fields Shoe Co., and James A. Fields transferred to the corporation the stock of boots and shoes and the good will above mentioned, and received therefor five hundred shares of the stock of the new corporation of the par value of $50,000.

" Edward L. Barr and Everett V. Prouty each paid in $10,000 in cash and received one hundred shares of the stock, the other corporators being all nominal and having no pecuniary interest in the stock of the corporation.

" Of the five hundred shares of stock which James A. Fields received he indorsed four hundred shares in blank to Charles N. Prouty, who held the same as collateral security for the payment of the debt of James A. Fields to him and against liability as indorser of the latter's notes.

" The stock was not transferred to Charles N. Prouty on the books of the company but remained in the name of James A. Fields, who was the owner thereof, subject to the transfer as collateral. Three agreements dated Feb. 9, May 3, and Sept. 3, 1889, were afterward made between Charles N. Prouty and James A. Fields, defining the conditions upon which the stock of the James A. Fields Shoe Co. was held by Charles N. Prouty, and clearly showing that [as between the parties themselves

there was no question but that Charles N. Prouty held it (the stock of the company) as collateral security for the payment of James A. Fields's $14,000 note, and for the payment of the notes of composition with the creditors of Austin Fields & Co. which had been indorsed by Charles N. Prouty.] [8]

" The James A. Fields Shoe Co. conducted a general jobbing business in boots and shoes under the management of James A. Fields, Everett V. Prouty and Edward L. Barr, as officers and principal stockholders, until October, 1889, at which time Everett V. Prouty and Edward L. Barr purchased the five hundred shares of stock of James A. Fields in the corporation, and in consideration therefor paid him $10,000 in cash, and assumed all of his liability to Charles N. Prouty on the $14,000 note, four composition notes of $7,000 each, and one note for $2,201.38 given in settlement of the indebtedness of Austin Fields & Co. to Isaac Prouty & Co., making in the aggregate $30,201.38, and Charles N. Prouty gave his consent to the transaction, accepted Everett V. Prouty and Edward L. Barr as his debtors, and released James A. Fields from all liability on the said notes, and accepted from Everett V. Prouty and Edward L. Barr as collateral security for the indebtedness assumed by them four hundred shares of the stock of the corporation. At the time of this transaction two agreements were made, one signed by Charles N. Prouty, dated Oct. 9, 1889, and the other signed by Everett V. Prouty and Edward L. Barr, to which James A. Fields was a party but did not sign, which was dated October  , 1889, and it is evident that the two agreements were executed or intended to be executed on the same day, as they both relate to and fully explain the transaction.

" For the purpose of carrying out these agreements, the certificates for four hundred shares of James A. Fields stock which were held by Charles N. Prouty as collateral were transferred to Charles N. Prouty by filling in the blank transfer on the back of the certificate, and, on Oct. 15, 1889, the certificate was surrendered by Charles N. Prouty, who on that day assigned the shares to Everett V. Prouty and Edward L. Barr, whereupon new certificates were issued to Everett V. Prouty and Edward L. Barr for four hundred shares of the stock, and they in turn indorsed them in blank to Charles N. Prouty, as

collateral security for the debt which they had assumed. These certificates, indorsed in blank, were in the possession of Charles N. Prouty at the time of the hearing.

" It does not appear that any certificates of stock in the corporation were ever issued to him. The only time his name appears upon the transfer book of the company is in the transfer of the Fields stock to him and from him to Everett V. Prouty and Edward L. Barr on Oct. 15, 1889, as above mentioned.

" After the retirement of James A. Fields from the company the remaining stockholders desired to change the name of the corporation, and, on Nov. 15, 1889, the name was duly changed to the Prouty & Barr Boot & Shoe Co. After this change of name new certificates were issued to Everett V. Prouty and Edward L. Barr for the amount of their holdings in the James A. Fields Co., and they indorsed in blank to Charles N. Prouty four hundred shares of the stock under the new name, which he held as collateral in pursuance of the former agreement. The stock, however, was never transferred to him on the books of the company.

" There still remains due Charles N. Prouty of the old debt of James A. Fields, assumed by Everett V. Prouty and Edward L. Barr, the $14,000 note, which was given in consideration of his indorsement of the composition notes and about $14,300 of the notes given by James A. Fields in settlement with the creditors of Austin Fields & Co., which had been indorsed by Charles N. Prouty & Co.

" [It does not appear that either Charles N. Prouty, or the firm of Isaac Prouty & Co. of which he was a member, had any part in the formation of the corporation of James A. Fields Shoe Co.,] [7] nor that any member of the firm of Isaac Prouty & Co. ever held stock of either the James A. Fields Shoe Co. or the Prouty & Barr Boot & Shoe Co. in their own right or in any way except as collateral security for the debt of James A. Fields to Charles N. Prouty, which was afterwards assumed by Everett V. Prouty and Edward L. Barr. [James A. Fields subscribed for the stock in his own name and his own right and not as agent for Charles N. Prouty,] [5] who acted in the whole transaction, as he testified, for his firm of Isaac Prouty & Co.

" Although the James A. Fields Shoe Co. was incorporated under the laws of Pennsylvania for the purpose of ' manufac-

turing and selling boots and shoes and foot wear,' it does not appear that either that corporation, or the Prouty & Barr Boot & Shoe Co. which succeeded it, ever 'manufactured' either boots or shoes, but they did a strictly jobbing business.   The claims of all the creditors against the Prouty & Barr Boot & Shoe Co., except the claims for rent and wages, are for the merchandise sold to the corporation, except the claim of Isaac Prouty & Co., which is composed of $20,000 money loaned and about $14,000 for merchandise sold, and the claim of Chester T. Lindley, which is for borrowed money.

" [It does not appear from the evidence that any member of the firm of Isaac Prouty & Co. had knowledge for what purpose the corporation was incorporated, or that they were not doing the particular business for which they were chartered.] [12]

" [Neither Edward L. Barr nor Everett V. Prouty were in any way connected with the firm of Isaac Prouty & Co. and, with the exception of the fact that Everett V. Prouty is a nephew of Charles N. Prouty, it does not appear that any member of the firm of Isaac Prouty & Co. was in any way interested in the corporation of Prouty & Barr Boot & Shoe Co. or any member thereof, except as creditors.] [10]

" All of the claimants before the auditor dealt with the Prouty & Barr Boot & Shoe Co. as a corporation, and in that respect they all stand upon an equal footing.

" Between Jan. 29, 1889, and Sept. 22, 1890, Isaac Prouty & Co. sold merchandise to Prouty & Barr Boot & Shoe Co., on which account there was due Isaac Prouty & Co. at the time the judgment note in this case was given a balance of $14,623.11. In the month of June, 1890, the officers of the defendant corporation requested Isaac Prouty & Co. to loan the corporation $20,000 for the purpose of assisting them in their business. Isaac Prouty & Co. agreed to loan them that amount upon condition that they would give a judgment note for the amount so loaned and the amount of the debt due them for merchandise. On June 26, 1890, an agreement was entered into between the defendant corporation and Isaac Prouty & Co., by the terms of which Isaac Prouty & Co. agreed to loan the corporation the money requested, and the defendant corporation agreed to give them a judgment note and to render monthly statements of its condition, and to give no other judgment notes except to Chester

T. Lindley for money which he had loaned, and the judgment note was given in accordance with this agreement, and Isaac Prouty & Co. loaned the defendant corporation $20,000 as requested, which sum yet remains unpaid and is included in their judgment in this case.

" In September, 1890, the defendant became unable to meet its obligations, and a suit was commenced against it by Kimball Brothers, in which judgment was obtained Oct. 14, 1890. On Sept. 24, 1890, the corporation defendant gave a judgment note to Isaac Prouty & Co. for $34,551.40, payable on demand, which was entered of record Sept. 25, 1890, and on the same day execution issued, and a levy was made by the sheriff on the goods of the defendant. On Sept. 24th the defendant also gave a judgment note to Thomas White and others, trading as Thomas White & Co., for $7,341.86, on which judgment was also entered Sept. 25, 1890, execution issued, and a levy made by the sheriff. The judgment note given by the defendants on June 26, 1890, to Chester T. Lindley for $11,268.25, payable one day after date, was also entered of record Sept. 25, 1890, execution issued, and a levy made. From the sheriff's indorsement on the writs and his return thereto it appears that the levy was first made on the writ issued upon the judgment of Charles N. Prouty & Co., that being the first writ placed in the sheriff's hands. On Sept. 26, 1890, Thomas L. Southwick entered suit against the defendant for a debt of $1,056.20, and issued an attachment under the act of 1869, by virtue of which the sheriff, on Sept. 27, 1890, attached defendant's property which had been levied upon under prior writs. On Sept. 26, 1890, the defendant made an assignment for the benefit of creditors of James W. Carson.

" On Oct. 14, 1890, Kimball Brothers obtained a judgment against the defendants for $940.12, and the same day issued execution thereon, and the sheriff made a levy on the defendant's goods subject to the prior levies. On Oct. 31, 1890, the sheriff sold the goods of the defendant on the writ of fi. fa. issued upon the judgment of Isaac Prouty & Co., and subsequent writs, for the sum of $33,875.45. On Dec. 6, 1890, Kimball Brothers obtained from your honorable court an order upon the sheriff to pay into court the fund realized from the sheriff's sale, and it is this fund which your auditor was appointed to distribute. . . .

" Messrs. Sparhawk, Miller and Barringer on behalf of Kimball Brothers, Thomas L. Southwick and other creditors contend that the Prouty & Barr Boot & Shoe Co. was a partnership and not a corporation, for the reason that they were incorporated for the purpose of manufacturing and selling boots and shoes, etc., and did not manufacture, but simply bought and sold boots and shoes (a business for which a charter cannot be obtained in Pennsylvania), and that therefore as to creditors of the defendant company the stockholders have made themselves individually liable by engaging in a business which they would not and did not have any legal right to transact under their charter, and the persons who dealt with the individuals doing business under the corporate name may treat them as partners and look to them individually for the payment of their accounts.

" They further contend that Isaac Prouty & Co. were members of the firm or partnership of the Prouty & Barr Boot & Shoe Co., because James A. Fields, acting for Charles N. Prouty (who represented Isaac Prouty & Co.), contributed merchandise owned by Charles N. Prouty (and by his authority) to the capital of the company, taking stock therefor, which was afterwards assigned to the said Charles N. Prouty, and that, being members of the firm or partnership, a judgment could not be legally confessed to them, and that they are therefore not entitled to participate in the fund.

" As to the first proposition, the auditor is of the opinion that it is a question which cannot be taken into consideration in this proceeding ; for [so long as the corporation is in existence—so long as the charter stands unrevoked—the corporation is a corporation, and must be so considered as relates to third parties dealing with the corporation as such ; and before an auditor appointed to distribute the proceeds of a sheriff's sale of the personal property of a corporation between the creditors of that corporation, the question of the validity of the corporation cannot be considered.  If the contesting creditors set up a title adverse to the proceedings by which the money is paid into court for distribution they cannot come in for a share.] [14]

" The only question to be here considered is whether in the distribution of the fund realized from the sale of defendant's property the first execution creditor is entitled to the fund as against the other creditors.

" Conceding, however, that the question of whether the defendant was a corporation or a partnership might be raised in this proceeding, the evidence would not justify the finding that Isaac Prouty & Co., the execution creditors of the Prouty & Barr Boot & Shoe Co., had any interest whatever in the latter company other than as a creditor for money loaned and merchandise sold.

" It therefore becomes a question only of which of the creditors of the Prouty & Barr Boot & Shoe Co. are entitled to the fund brought into court for distribution, all of the claimants being bona fide creditors.

" [The unsecured creditors whose claims had not been reduced to judgment before the sheriff's sale have no standing before the auditor, but must present their claims before the assignee.] [13]

" The claim of Kimball Brothers arising out of judgment obtained prior to the sheriff's sale, but subsequent to the assignment for the benefit of creditors, and the attachment of Thomas L. Southwick, executed prior to the sheriff's sale, but subsequent to the assignment for the benefit of the creditors, would not entitle them to participate in the fund before the auditor, inasmuch as their liens attached after the title to the defendant's property had passed to the assignee for the benefit of creditors, subject to the executions levied before the assignment, and if the claimants, upon whose judgments execution issued prior to the assignment, are not entitled to the fund it must be awarded to the assignee for the benefit of creditors.

" This leaves to be considered only the question of whether or not the judgments in favor of Isaac Prouty & Co., Chester T. Lindley and Thomas White & Co. are valid judgments, confessed for bona fide indebtedness of the defendant corporation, and, if so, to whom the fund shall be awarded.

" The validity of the judgment in favor of Chester T. Lindley and Thomas White & Co. is not questioned, and [the auditor is of the opinion that the evidence clearly established the fact that on the day the judgment in favor of Isaac Prouty & Co. was confessed by the defendant corporation there was justly due by the latter to the former the sum of money for which the judgment was confessed, and that there was no fraud either in the contracting of the debt or in the confession of the judg-

ment; and also that it was a debt of the corporation defendant and not a debt in whole or in part of the individual members of the corporation, as alleged in the affidavit upon which the money was paid into court.] [3] The judgment of Isaac Prouty & Co. therefore being a valid judgment and the levy made by the sheriff having been first made under the execution upon their judgment, and the fund in court after paying the claims for wages and the costs of this proceeding being insufficient to fully satisfy their claim, they are entitled to the balance of the fund arising from the sheriff's sale, after deducting wages, costs, etc., and it is so awarded, as shown by the schedule of distribution hereto attached.]" [2]

Exceptions to finding as in brackets were dismissed.

*Errors assigned* were, inter alia, dismissal of above exceptions, quoting them.

*John Sparhawk, Jr.*, and *Furman Sheppard, John Marshall Gest* with them, for appellants, cited: Cook on Stockholders, § 233; Booth v. Wonderly, 36 N. J. L. 251: Vredenburg v. Behan, 33 La. An. 627; McGrew v. City Produce Exchange, 4 S. W. R. 38; Ward v. Brigham, 127 Mass. 24; Medill v. Collier, 16 Ohio, 599; Ridenour v. Mayo, 40 Ohio, 9; Jessup v. Carnegie, 80 N. Y. 441; National Bank of Watertown v. Landon, 45 N. Y. 410; Glen v. Breard, 35 La. An. 875; First National Bank of Salem v. Almy, 117 Mass. 476; Fay v. Noble, 7 Cushing, 188; Lane's Ap., 105 Pa. 49; Stang's Ap., 10 W. N. 409; Messersmith v. Bank, 96 Pa. 440; Hopkins's Ap., 90 Pa. 69; Koehler v. Black River Falls Iron Co., 2 Black, 715; Gas Light Improvement Co. v. Terrell, L. R. 10 Eq. 168; Adams v. Kehlor, 35 Fed. R. 433; Cochran v. Ocean Dry Dock Co., 30 La. An. 1365; Chambersburg Woolen Co. v. Chambersburg Mfg. & Bldg. Assn., 31 Leg. Int. 357; Baltimore Central Railroad's Ap., 70 Pa. 355; Bayard's Ap., 72 Pa. 453; Oakland Ry. v. Keenan, 56 Pa. 198; Fairmount Coal & Iron Co.'s Ap., 14 W. N. 214; Baker's Ap., 108 Pa. 510; Smith v. Reiff, 20 Pa. 364; McNaughton's Ap., 101 Pa. 550; Warner v. Hopkins, 111 Pa. 328.

*Frank P. Prichard, T. Elliott Patterson* with him, for ap-

pellees, cited : Dana v. Bank of the U. S., 5 W. & S. 245
Reading Iron Works' Est., 149 Pa. 268 ; Flagg v. Farnsworth,
12 W. N. 500; Second National Bank v. Mfg. Co., 13 W. N.
174.

PER CURIAM, January 30, 1893 :

The specifications of error are numerous, and refer to the
findings of fact by the auditor. No portion of the testimony is
printed beyond that of a documentary character. We do not
agree that the documents referred to show any errors in the
findings of the master, or in the conclusions he draws from ad-
mitted facts, approved as they are by the learned court below.
A discussion of the numerous assignments would consume much
time to little purpose.

The decree is affirmed, and the appeal dismissed at the costs
of the appellants.